# IN THE UNITED STATES DISTRICT COURT
## for the
## DISTRICT of COLUMBIA

| | |
|---|---|
| **Michael C. Baxley,**<br>219 R Bar M Ranch Road<br>Florence, SC 29501<br>(843) 317-9360<br>**Plaintiff,**<br><br>**V.**<br><br>**Honorable Christine Wormuth,**<br>in her official capacity as<br>Secretary of the Army,<br>441 G Street<br>Washington, DC 20314<br><br>and<br><br>**Army Board for Corrections**<br>**of Military Records,** *et. al.,*<br>251 18th Street South, Suite 385<br>Arlington, VA 22202-3513<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL ACTION NO.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case: 1:21−cv−02245<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 8/20/2021<br>Description: Pro Se Gen. Civ. (F−DECK) |

**COMPLAINT**

# Table of Contents

Plaintiff's Action for Judicial Review of an Agency's Final Decision denying correction of an error in Plaintiff's US Army Discharge ................................................................................................. 1

COMPLAINT .................................................................................... Error! Bookmark not defined.

JURISDICTION AND VENUE ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL AND REGULTORY BACKGROUND ....................................................................... 5

    PLAINTIFF'S DISCHARGE ................................................................................................ 5
    REVIEW BY ARMY DISCHARGE BOARD ..................................................................... 8

Count I ....................................................................................................................................... 10

Administrative Procedure Act, 5 U.S.C. § 706 (2)(A) ............................................................ 10

Refusal to Correct Discharge Status ........................................................................................ 10

Count II ..................................................................................................................................... 13

Violation of Procedural Due Process ....................................................................................... 13

PRAYER FOR RELIEF ............................................................................................................ 15

APPENDIX - I ........................................................................................................................... 17

    1. AR - 600-85
    2. ABCMR's Denial

**Table of Authorities**

*Accardi v. Shaughnessy*, 347 U. S.  260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). 28 U.S.C. § 1343 ... 11

*Adamson v. Unum Life Ins. Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006) .................... 11

*Bland v. Connally*, 293 F.2d 852, 858 (D.C.Cir.1961) .................................................................. 6

*Denton v. Secretary of Air Force*, 483 F.2d 21, 23 (9th Cir.1973)................................................ 12

*Doe v. Schachter*, 804 F. Supp. 53, 63 (N.D.Cal.1992) ................................................................. 12

*Gayer v. Schlesinger*, 490 F. 2d 740, 752 (D.C.Cir.1973)) ........................................................... 13

*Giles v. Secretary of the Army*, 475 F. Supp. 595, 598 (D.D.C.1979)........................................... 7

*Goldburg V. Kelly*, 397 U.S. 254 (1970) ....................................................................................... 14

*Hammond v. Lenfest*, 398 F.2d 386, 715 (2 Cir.) ......................................................................... 12

*Hammond v. Lenfest*, 398 F.2d at 715 .......................................................................................... 13

*Mathews V. Eldrige*  424 U.S. 319, 335 (1976)............................................................................ 15

*Pacific Molasses Co. v. FTC*, 356 F.2d 386, 389-390 (5 Cir. 1966)............................................ 12

*Sangamon Valley Television Corp. v. United States*, 106 U.S. App. D.C. 30, 269 F.2d 221, 224-225 (1959)..................................................................................................................................... 12

*United States ex rel. Brooks v. Clifford*, 409 F. 2d 700, 706 (4 Cir.).......................................... 12

*United States ex rel. Brooks v. Clifford*, 409 F.2d at 706 ............................................................ 13

*Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) ...................................... 12

*Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975)........................................................ 13

*Yellin v.  United States*, 374 U. S. 109 S.Ct. 1828, 10 L.Ed.2d 778 (1963) ................................. 12

*Yellin v. United States*, 374 U.S. at 121, 83 S.Ct. 1828, 10 L.Ed.2d 778 .................................... 15

## Table of Statutes, Rules & Regulations

10 U.S.C. § 1552(a)(1) ...................................................................................... 13

28 U.S.C. §§ 1331, 1343, 1346, and 2201 ........................................................ 1

3-16b, AR 600-85 (Alcohol and Drug Abuse and Prevention and Control Program) .................... 6

42 U.S.C. 1391(e) ............................................................................................ 1

5 U.S.C. § 706 ................................................................................................ 14

5 U.S.C. §§ 555-57 ......................................................................................... 11

Administrative Procedure Act, ("APA") 5 U.S.C. § 701 .................................... 1

Administrative Procedure Act, 5 U.S.C. § 706 ................................................ 1

Administrative Procedures Act, 5 U.S.C. § 706(2) (A) and (D) ....................... 11

AR 600 – 85, Chapter 3 – 16b ......................................................................... 14

AR 600-85 Exemption Policy Section 5., P 3-18(d)) ........................................ 11

AR 600-85, §3-18(d) ....................................................................................... 12

AR 600-85, 3-18 .............................................................................................. 7

AR 600-85, Chapter 3, Table 3-1 .................................................................... 3

AR 635-200 ...................................................................................................... 6

Army Board for the Correction of Military Records, ("ABCMR")10 U.S.C. § 1552, et. seq. ........ 1

United States Code, § 1552(b) ......................................................................... 5

## <u>Plaintiff's Action for Judicial Review of an Agency's Final Decision denying correction of an error in Plaintiff's US Army Discharge</u>

Michael C. Baxley ("Plaintiff") brings this action under the Administrative Procedure Act, ("APA") 5 U.S.C. § 701, and the Army Board for the Correction of Military Records, ("ABCMR")10 U.S.C. § 1552, et. seq., for judicial review of an agency's final decision denying correction of an error in Plaintiff's U. S. Army discharge.  In support of this action, Plaintiff alleges that the ABCMR reports directly to Honorable Christine Wormuth ("Wormuth") in her official capacity as Secretary of the Army, and therefore she is responsible for the operation of the ABCMR and all of its reviews and decisions. As grounds therefore, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1346, and 2201. This action arises under the Fifth Amendment of the United States Constitution; the Fourteenth Amendment of the United States Constitution; and the Administrative Procedure Act, 5 U.S.C. § 706.

2.      Venue is proper in this judicial district pursuant to 42 U.S.C. 1391(e).

3.      Michael C. Baxley is a veteran of the U. S. Army. He is a citizen of the United States and resides at 219 R. Bar M. Ranch Road Florence, SC 29501. Telephone: (843) 317-9360.

4.      Honorable Wormuth is the Secretary of the Army and her office address is 101 Army Pentagon, Washington, DC 20314.

5.      Army Board for the Correction of Military Records is located at 3 5 1 18th Street South, Suite 385 Arlington, Va. 22202-3513.

## STATEMENT OF FACTS

6.      The record reflects that Plaintiff is a veteran of the Peacetime and Vietnam Era Army.

7.      Plaintiff served in the Army from September 3, 1974 to November 10, 1976.

8.      Plaintiff received DD Form 214, Certificate of Release or Discharge from Active Duty, from September 3, 1974 through November 10, 1976.

9.      Plaintiff was discharged from the service for Misconduct and issued an Undesirable Discharge Certificate.

10.     On October 29, 1976, Plaintiff appeared before a board of officers convened by the Commander U. S. Army Retraining Brigade at Fort Riley, KS to determine whether Plaintiff should remain in the service or be administratively separated.

11.     The board was also to make recommendations to the convening authority.

12.     In the board proceedings concerning Plaintiff, the board considered the evidence before it and found that:

    a.  The Plaintiff has the ability to perform military duty in a satisfactory manner as evidenced by:

        i.  GT Score of 126.

        ii.  Graduation from high school.

        iii.  Successful completion of BCT, AIT and having earned MOS 62M20.

        iv.  Having served satisfactorily for 23 months and attained the grade of E-3.

        v.  Evaluation by Social Work at U.S. Army Retraining Brigade that Plaintiff had no characterological abnormalities and appeared capable of completing his military obligations.

b.  That Plaintiff's misconduct is evidenced by:

      i.  Conviction by one court-martial for one specification of violation of Article 93 and one specification of violation of Article 128.

      ii.  Numerous discreditable incidents recorded by his cadre at the Retraining Brigade, which include items on the resume, with the exceptions of exhibits c-6, c-8, c-20 and c-22 which were deemed possibly exempt information according to AR 600-85, Chapter 3, Table 3-1.

c.  The officers board, RECOMMENDATION: "In view of the findings, the board recommends Plaintiff be eliminated from the service for misconduct with the issuance of an Undesirable Discharge Certificate".

13.  While the record shows that Plaintiff is a rehab failure, the clear intent is to show that Plaintiff was involved in the Alcohol Drug Abuse Prevention Control Program ("ADAPCP") while stationed at Fort Eustis, Virginia from January 1975 thru June 1976. Exhibits C-6, C-8, C-20, and C-22 and other exhibits were in violation of exemptions AR 600-85 because they were sent in the "Board Packet" of documents with the recommendation for discharge in violation of policy that revealed Plaintiff was in ADAPCP.

14.  Plaintiff's discharge was upgraded from undesirable discharge Certificate to General Discharge Under Honorable Conditions Certificate on December 13, 1978 by the Army Discharge Review Board. ("ADRB").

15.  The Record shows the Majority of the ADRB voted to grant Plaintiff partial relief for the following reasons: "He was discharged for frequent incidents and misconduct and the record supports the discharge with one SPCM, two Civil Convictions and a failure to be rehabilitated while serving and retraining at Fort Riley. However, the board considered the

mitigating factors which led to his discharge. These were evidence in the record of alcohol and drug abuse and his failure at drug rehabilitation. Also, considered by the board was the period of approximately 1 1/2 years prior to his assignment to Fort Riley where he had no lost time due to AWOL".

16.     The Plaintiff has a service-connected disability called Persistent Depressive Disorder or Dysthymic Disorder, that started while he was in the army.  The army doctors did not or would not diagnose this illness.  Plaintiff was told that he has no behavioral health condition while he was in the army, and in the Commander's recommendation at the time of discharge.

17.     Plaintiff contends there was evidence in the record of behavioral health condition at the time of discharge and was a mitigating factor to support an upgrade to his discharge characterization.

18.     After the Plaintiff's Discharge was upgraded in 1978, he was able to get his veterans benefits.  Plaintiff was eligible to go to school, eligible to purchase a home under the G.I. Bill, and other benefits entitled to veterans who served in time of war. Plaintiff was agreeable with this discharge because it was Under Honorable Conditions and therefore Honorable or so he thought.

19.     On March 3, 2018, the Veterans Affairs granted Plaintiff 100% disability for his service - connected disabilities and unemployability.

20.     Plaintiff went to Shaw Air Force Base in Sumter, SC on November 27, 2018 to apply for a veteran's identification (ID) card.

21.     Plaintiff was told that due to having a character of service of under honorable conditions on his DD Form 214, he could not be issued a veteran's ID card.

22.     Plaintiff was also told that the character of service would have to state honorable.

4

23.     On November 28, 2018 Plaintiff made an application to the ABCMR to correct the character of discharge on his discharge certificate from General Under Honorable Conditions to Honorable.

24.     Plaintiff did not file within the three-year time frame provided in Title 10, United States Code, § 1552(b); however, the ABCMR conducted a substantive review of this case and determined it is in the interest of justice to excuse the Plaintiff's failure to timely file.

25.     The ABCMR held proceedings for Plaintiff's application on October 7, 2019 and Plaintiff received notification of agency decision that his application was denied on June 6, 2020.

26.     Board Determination/Recommendation: "The evidence does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned."

27.     This decision of the Plaintiff's application is final.

## LEGAL AND REGULTORY BACKGROUND
## PLAINTIFF'S DISCHARGE

28.     The board of officers at Fort Riley, KS on October 29, 1976 erred in their decision that the Plaintiff be eliminated from the service for misconduct with the issuance of an Undesirable Discharge Certificate. Plaintiff contends that he had been improperly separated from the Army with less than honorable discharge. In particular, Plaintiff contends that since his service discharge was based, at least in part, upon exempt evidence, in the form of Plaintiff's involvement with treatment in the army's ADAPCP. Had the exempt evidence not been a basis for an Undesirable Discharge Certificate, that evidence would have not been in the "Board Package".

29.     The board of officers reviewed all the evidence in the "board Packet" prior to the hearing, to include documents that listed a resume with 48 items on it, with exempted information that Plaintiff has been identified as an alcohol and drug rehabilitation failure. This review is in violation of AR 600-85. Exemption is automatic. It is not granted, and it cannot be withdrawn.

30.     On 4 November 1976, the applicant's Senior Defense Counsel ("SDC") stated, "it is believed that certain evidence present in the "board packet" which passed through the chain of command and was presented to the board was in fact "exempt" as defined in paragraph 3-16b, AR 600-85 (Alcohol and Drug Abuse and Prevention and Control Program) and chapter AR 635-200. The SDC requested the commander consider the factors and in the first instance, discharge the applicant pursuant to the clear mandate of chapter 16, AR 635-200. If the commander, however, did not concur it is requested that he consider the equities of the situation and at a minimum direct issuance of a general discharge certificate". Additional comments and regulatory extracts may be reviewed in the packet. Citing *Bland v. Connally*, 293 F.2d 852, 858 (D.C.Cir.1961), the District Court recognized that "a general discharge carries with it a stigma with many harmful features of an undesirable discharge. Not only is a person's reputation injured and jeopardized, but employment opportunities are restricted, both in the public and private sector(s)." *Giles v. Secretary of the Army*, 475 F. Supp. 595, 598 (D.D.C.1979).

31.     On 8 November 1976, the Staff Judge Advocate ("SJA") stated "there was no prohibition against mention of a member's failure in rehabilitation, as long as involvement in the program was not the motivating factor in recommending discharge. There was sufficient other evidence to support the recommended discharge." Additional comments and regulatory extracts may be reviewed in the packet. The "mention" of a member's failure in alcohol and

drug rehabilitation is a clear violation of AR 600-85. Even if the "mention of a member's failure in rehabilitation, was not the motivating factor in recommending discharge", even if there was sufficient other evidence to support the recommended discharge, it was evidence presented to the Board of Officers in the "board packet" and evidence that Plaintiff was involved in ADAPCP and therefore prohibited.

32.     The statement of the SJA of a member's failure in the ADAPCP and the "board packet" that was sent through the chain of command and presented to the board was exempt, and an Honorable Discharge Certificate should have been issued to the Plaintiff. However, if either the commander (in his/her recommendation for discharge or in documents forwarded with his/her recommendation), or any member of board of officers adjudicating the service member's case, or the investigating officer/recorder presenting the case before the board, initially introduces evidence prohibited above, the member will receive an honorable discharge certificate, regardless of his overall performance of duty. AR 600-85, 3-18.

33.     Definition of exemption. Exemption is –

    a.  An immunity from disciplinary action under the UCMJ, or administrative separation with less than an honorable discharge, as a result of certain use of alcohol abuse, or drug abuse or possession of drugs incidental to personal use.

    b.  An immunity from use of evidence obtained directly or indirectly from the member having been in the ADAPCP, as described in paragraphs 3-17 and 3-18 and in table 3-1 AR 600-85, 3-16. AR 600-85.

34.     On May 23, 1975, Plaintiff was detained by Newport News City Police for violation of Drug Control Act of Va. The reason Plaintiff was arrested, is because he was there when residence was raided. Nothing in the record states that Plaintiff was using drugs or in possession

of drugs, and there was no finding of guilt by the Court. On July 12, 1976 court record shows, "Under further examination of the within charge, the defendant is hereby released from custody and the charge against him is hereby dismissed on a finding of other than guilty as provided in §54-524.101:3 of the Code of Virginia".

35.     On November 26, 1975, Plaintiff was detained by Newport News City Police for failure to stop for a red light, reckless driving, and DWI. On March 4, 1976, court record shows that "the Court doth find the said Michael C. Baxley GUILTY of Improper Driving and doth fix and ascertain his punishment to be a fine of Seventy-Five ($75.00) Dollars and its cost about this prosecution expended".

36.     These two detainments one of which was not a civil conviction, and was a dismissal, and a finding of other than guilty. The other charge was a guilty plea of improper driving, no DWI or reckless driving. None of these charges ended up in being jail time of one year or more.

37.     Plaintiff's discharge was upgraded from Undesirable Discharge Certificate to General Discharge Under Honorable Conditions Certificate on December 13, 1978 by the Army Discharge Review Board ("ADRB").

## REVIEW BY ARMY DISCHARGE BOARD

38.     The ADRB's overall assessment: "The applicant enlisted on 3 Sep 74 at the age of 18 and for 3 years. He completed BCT/AIT and was assigned as a forklift operator at Ft. Eustis. EM was apprehended by Newport News, VA. police on two occasions: possession of marijuana and LSD 23 May 1975– probation - Jul 75; 26 Nov 75 driving under influence of alcohol, failure to stop at a red light, reckless driving – improper driving 4 March 76. Barred to Reenlistment 23 Dec 75. He had been in drug rehab, but failed in this when returned to duty

station.  Psychiatric evaluation listed him as normal. C.O. says he is a rehab failure and a court referral when initiating bar to reenlistment. Individual has 113 days lost. Most is due to military confinement – 102 days. Applicant appears to have been discharged for a combination of military offenses, inability to become rehabilitated free from drug/alcohol, and civil offenses. He was discharged for frequent acts and has only one Special Court Martial.  His EER shows Good/Good for conduct and efficiency during period of Sep 75 to Jun 76.  His MOS test for Feb 76 shows average ability. He is a CAT II and a high school graduate. Individual requests an Honorable. He submits four items to attest to his post service conduct".

39.     Plaintiff contends that every time "rehab failure" is mentioned in any document, it is exempt information of his involvement in ADAPC being released and therefore, is a violation of exempt and prohibited evidence.

40.     The ADRB's rationale to Plaintiff's discharge was:

   a.   Majority: The Board voted to grant partial relief for the following reasons: He was discharged for unfitness due to frequent incidents and misconduct and the record supports the discharge with one SPCM, two Civil Convictions and a failure to be rehabilitated while serving and retraining at Ft. Riley. However, the board considered the mitigating factors which led to his discharge. There was evidence in the record of alcohol and drug abuse and his failure to be rehabilitated. Also considered by the board was the period of approximately 1 1/2 years prior to his assignment to Ft. Riley where he had no lost time due to AWOL.

   b.   Minority and if Minority Report is not submitted: A minority of the board voted to deny relief based on the serious acts of indiscipline proceeding and during his service. The views of the minority were considered by the majority.

   c.  Full Relief Denied Because (if appropriate): The acts of indiscipline could not be

excused by the mitigating factors.

The ADRB stated in (a.) above that there was evidence in the record of alcohol

and drug abuse and his failure to be rehabilitated. This evidence presented at the Board of

Officers in the "Board Packet" was exempt evidence pursuant to AR 600-85, and Plaintiff

should have received an Honorable Discharge.

### Count I
### Administrative Procedure Act, 5 U.S.C. § 706 (2)(A)
### Refusal to Correct Discharge Status

41.    Plaintiff alleges and incorporates herein by reference as though fully set forth each

and every allegation contained in paragraphs 1 through 40 of this Complaint.

42.    The APA, which applies to all executive branch and independent agencies,

prescribes procedures for agency rulemakings and adjudications, as well as standards for

judicial review of final agency actions. See 5 U.S.C. §§ 555-57.

43.    The ABCMR's decision on the merits of Plaintiff's case was arbitrary, capricious,

unsupported by substantial evidence, contrary to law, and agency policy, abuse of discretion

for reasons including but not limited to those discussed below. The ABCMR failed to consider

AR 600-85 Exemption Policy that is substantial evidence.   Substantial evidence means more

than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  See *Adamson v. Unum Life Ins. Co. of America*, 455 F.3d

1209, 1212 (10th Cir. 2006).  The ABCMR failed to consider (AR 600-85 Exemption Policy

Section 5., P 3-18(d)) and its evidence that would have granted Plaintiff an Honorable

Discharge.

44.     An agency of the government must scrupulously observe rules, regulations, or procedures which it has established.  When it fails to do so, its action cannot stand and courts will strike it down.    This doctrine was announced in United States ex rel. *Accardi v. Shaughnessy*, 347 U. S.  260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). 28 U.S.C. § 1343, and under the Administrative Procedures Act, 5 U.S.C. § 706(2) (A) and (D).   There, the Supreme Court vacated a deportation order of the Board of Immigration because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process. The Accardi doctrine was subsequently applied by the Supreme Court in *Service v. Dulles*, 354 U. S. 363. Plaintiff contends that every time rehab failure is "mentioned" in any document, it is exempt information of his involvement in ADAPCP being released and therefore is exempt and prohibited evidence and the ABCMR is not following its own established procedures. See AR 600-85, §3-18(d), 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1959), and *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), to vacate the discharges of government employees. See also *Yellin v.  United States*, 374 U. S. 109 S.Ct. 1828, 10 L.Ed.2d 778 (1963).  The Accardi doctrine has been utilized by the courts of appeal. e.g., *United States ex rel. Brooks v. Clifford*, 409 F. 2d 700, 706 (4 Cir.), rehearing denied, 412 F.2d. 1137, (4 Cir. 1969); *Hammond v. Lenfest*, 398 F.2d 386, 715 (2 Cir.), vacated on rehearing on other grounds, 398 F.2d 718 (2 Cir. 1968); *Pacific Molasses Co. v. FTC*, 356 F.2d 386, 389-390 (5 Cir. 1966); *Sangamon Valley Television Corp. v. United States*, 106 U.S. App. D.C. 30, 269 F.2d 221, 224-225 (1959).

45.     The ABCMR failed in reasoned decision making when it concluded that the record does not demonstrate the existence of a probable error or injustice.   The record shows very

substantial evidence error, injustice, inequity of policy and regulations that were ignored when the Plaintiff was discharged.

46.     The exemption policy that restricts the consequences of service member's involvement in the ADAPCP is described in Section 5., Chapter 3 of AR 600 – 85. The ABCMR and the ADRB failed to consider this procedure for agency rulemakings and adjudications evidence when reviewing Plaintiff's applications.   Under the Administrative Procedures Act, the reviewing court "shall review the whole record or those parts of it cited by a party". 5 U.S.C. § 706. See, e.g., *Doe v. Schachter*, 804 F. Supp. 53, 63 (N.D.Cal.1992) ("inquiry would be limited to reviewing the underlying record and determining if in fact the agency complied with the relevant regulations"); *Denton v. Secretary of Air Force*, 483 F.2d 21, 23 (9th Cir.1973) (district court heard action on the administrative record), cert. denied, 414 U.S. 1146, 94 S. Ct. 900, 39 L. Ed. 2d 102 (1974). If, after reviewing the record in the present case, the court was to find that the Army violated any particular procedure, the remedy would be a remand for the purpose of compliance with applicable procedures only. Id (citing *Gayer v. Schlesinger*, 490 F. 2d 740, 752 (D.C.Cir.1973)).

47.     The Defendant McCarthy has violated Plaintiff's constitutional rights in his authority to see that the errors, inequities, and injustices are corrected. Congress has authorized the Secretary of the Army, acting through the ABCMR, to correct any military record when it is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Secretary regularly exercises this power to upgrade the discharge status of a former service member.  The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975). These cases are consistent with the doctrine's purpose to

prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures. As the Second Circuit said in *Hammond v. Lenfest*, 398 F.2d at 715, cited with approval in *United States ex rel. Brooks v. Clifford*, 409 F.2d at 706, departures from an agency's procedures "cannot be reconciled with the fundamental principle that ours is a government of laws, not men."

## Count II
## Violation of Procedural Due Process

48.    Plaintiff alleges and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49.    The Due Process protections of the Fifth Amendment of the U.S. Constitution require that an administrative agency conduct adjudication in a fair and orderly manner. The ABCMR failed to consider the errors in the separation process by failing to consider all evidence in the record especially AR 600 – 85, Chapter 3 – 16b.  This decision by the ABCMR not to consider this Army Regulation was capricious, arbitrary, and an abuse of discretion. Army regulation, (AR) -  A publication that sets forth missions, responsibilities, and policies; delegates authority;  sets objectives;  and prescribes mandated procedures to ensure uniform compliance with those policies.

50.    In the ABCMR's ROP, the board also stated "there is no evidence of applicant has applied to the Army Discharge Review Board for review of his discharge within that board's 15-year statute of limitations.  Under the Administrative Procedures Act, the reviewing court "shall review the whole record or those parts of it cited by a party". 5 U.S.C. § 706.  The evidence clearly stated in the record shows that this is an arbitrary and capricious decision made by the ABCMR.  Plaintiff had a ADRB hearing on December 13, 1978, where discharge was upgraded

from Undesirable to General Under Honorable Conditions. The ABCMR failed to review the whole record especially this part in the record, and is clearly an abuse of discretion.

51.     These decisions made by the ABCMR are capricious, arbitrary, and abuse of discretion and violate the Plaintiff's constitutional right under the Fifth and Fourteenth Amendments of the U. S. Constitution, and the Administrative Procedure Act.

52.     Plaintiff contends the ABCMR and the ADRB violated his constitutional right of the Fifth and Fourteenth Amendments by deprivation of due process of property rights under the "positivist" approach, a protected property or liberty interest might be found based on any positive governmental statute or governmental practice that give rise to a legitimate expectation. See *Goldburg V. Kelly*, 397 U.S. 254 (1970).   Plaintiff was denied his expected benefit to go on a military base to shop at the commissary among other entitlements, because of not having a character of Honorable on his discharge certificate.

53.     "Identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews V. Eldrige* 424 U.S. 319, 335 (1976).

54.     The ABCMR was arbitrary, capricious, and a clear error of judgement when it failed to correct an error that occurred in Plaintiff's discharge ruling at the Board of Officers hearing when they discharged Plaintiff with an Undesirable Discharge Certificate ignoring AR600-85. Administrative agencies are bound to abide by their internal rules according to

Accardi doctrine. An administrative agency is bound to follow its own rules, procedures and precedents. The ABCMR is in violation of Plaintiff's due process by not correcting the erroneous discharge and depriving Plaintiff of his property rights of getting a Disabled Veteran ID Card, and other not known benefits entitled to Veteran who served in time of war. The *Accardi* doctrine furthermore requires reversal irrespective of whether a new trial will produce the same verdict. In both *Yellin v. United States*, 374 U.S. at 121, 83 S.Ct. 1828, 10 L.Ed.2d 778, and Accardi itself, 347 U.S. at 268, 74 S.Ct. 499, 98 L.Ed. 681, the Supreme Court vacated government actions and remanded for new determinations consistent with the established procedures even though the Court doubted that these procedures would lead to a different result. Even though it was unlikely that the appellant would prevail on remand, the Court held that he "should at least have the chance given him by the regulations." *Yellin v. United States*, 374 U.S. at 121, 83 S.Ct. at 1836.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

    a.  Vacate the decision of the ABCMR;

    b.  Vacate ABCMR actions and remand for new determinations consistent with the established procedures;

    c.  Correct the erroneous Discharge Certificate to reflect Plaintiff's General Under Honorable Conditions Discharge Certificate to Honorable;

    d.  Declare the Secretary of the Army's October 7, 2019 decision to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law;

    e.  Declare that the Defendant ABCMR's decision to deny Plaintiff's application was not supported by substantial evidence;

f.  Declare the Defendant's October 7, 2019 decision by the ABCMR to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law; and

g.  Grant Plaintiff such other relief as the Court deems just and proper.

Dated: August _1_, 2021                              Respectfully Submitted,

Michael C. Baxley
Pro Se Litigant
219 R. Bar M. Ranch Road
Florence, SC 29501
(843) 317-9360

IN THE UNITED STATES DISTRICT COURT

For The

DISTRICT OF COLUMBIA

Michael C. Baxley, Pro Se,       )
Plaintiff,                       )
                                 )
                                 )
v.                               )  CIVIL ACTION NO.
                                 )
Hon. Christene Wormuth, et al,   )
Defendants.                      )
_____  )


## CERTIFICATION

I certify under penalty of perjury that the foregoing is true and correct. Executed on the  1st  day

of August, 2021.


Michael C. Baxley
Pro Se Litigant
219 R Bar M Ranch Road
Florence, SC 29501
(843) 317-9360

# APPENDIX - I

1 May 1976                                                      AR 600-85

# CHAPTER 3

## IDENTIFICATION, REFERRAL, AND EXEMPTION

### Section I.  GENERAL

3-1. Objective. The objective of identification is to discover alcohol or other drug abuse as early as possible and to refer the abuser to the ADAPCP for assistance.

3-2. Scope. a. Identification is accomplished through a variety of methods which are described in section II. One of these methods, biochemical testing, is discussed in detail in section VI.

b. The commander's responsibilities in the referral process are outlined in section III.

c. Clinical confirmation (by a physician) of alcohol or other drug abuse is a requirement for entry into the ADAPCP (see IV).

d. An exemption policy that restricts the consequences of servicemembers' involvement in the ADAPCP is described in section V.

### Section II.  METHODS OF IDENTIFICATION

3-3. Voluntary (self) identification. a. This is the most desirable method of discovering alcohol or other drug abuse. The individual whose performance, social conduct, interpersonal relations, or health becomes impaired because of the abuse of alcohol or other drugs has the personal obligation to seek treatment and rehabilitation. Command policies will encourage abusers to volunteer for assistance and will avoid actions that would discourage servicemembers from seeking help. Normally, members with an alcohol or other drug problem should seek help from their unit commander; however, they may initially request help from their installation ADAPCP or medical treatment facility, a chaplain, or any officer or noncommissioned officer in their chain of command. If a servicemember initially seeks help from an activity or individual other than his/her unit commander, the individual contacted will immediately notify the servicemember's unit commander and installation ADCO.

b. The requirement that the individual contacted must notify the servicemember's unit commander and installation ADCO is not in conflict with a chaplain's right of privileged communication. The situation in which the servicemember is seeking assistance from the ADAPCP is addressed

in a above, but the situation in which the member merely reveals to a chaplain that he/she is abusing or has abused alcohol or other drugs is not addressed. In the latter instance, it is expected that the chaplain would inform the member that—

(1) Professional alcohol/drug treatment and rehabilitation counseling is available through the ADAPCP;

(2) The Army program requires that the member's unit commander become involved in the rehabilitation process; and

(3) The chaplain cannot assist the member's entry into the ADAPCP without going through the member's unit commander.

c. Identifications resulting from a servicemember's seeking emergency medical treatment for an actual or possible alcohol or other drug overdose are considered to be a variation of volunteering. (See para 3-17b(5) for exception.) For reporting purposes, such cases will be classified as volunteer (self) identifications. See paragraph 3-18b for special instructions concerning applicability of the exemption policy to such cases.

d. For civilian employee volunteers, see paragraph 7-14.

3-1

**3–4. Command identification.** The deterioration of a servicemember's job performance, conduct, or other behavior in a manner frequently associated with alcohol or other drug abuse may signal suspicions of such abuse. In addition, a soldier may become a suspected abuser as a result of an inspection. Suspected abusers will be interviewed by their unit commander and, if appropriate, referred to the ADAPCP for initial interview and evaluation by a physician (para 3–8).

**3–5. Biochemical urine testing.** This method of identification is described in section VI.

## Section III. REFERRAL

**3–8. Responsibilities of commanders.** *a.* When individuals are identified, voluntarily or involuntarily, as possible alcohol or other drug abusers, their unit commanders will interview them and personally inform them of the evidence; advise them of their rights under Article 31, UCMJ; explain the provisions of the exemption policy; and give them the opportunity to provide additional evidence if they desire. If, at the conclusion of the interview, the commander believes that there remains a reasonable possibility of abuse, the commander will refer the individual to the ADAPCP to determine if alcohol or other drug abuse has or has not occurred. *All individuals with urine positives will be referred to the ADAPCP for evaluation by a physician except as indicated in paragraph 5–8c(2).* In the case of a member who has been diagnosed as an abuser by a physician during a sick call or other routine medical examination not associated with normal ADAPCP clinical confirmation procedures, the physician will inform the member's unit commander, who will, in turn, refer the individual to the ADAPCP for entry into the program. The physician's diagnosis in such cases serves as the clinical confirmation required in paragraphs 3–9 and 3–11*b*.

*b.* Persons apprehended by the military police for driving while under the influence of alcohol or other drugs will be referred to the ADAPCP for evaluation and education in accordance with AR 190–5. If the ADAPCP staff believes that treatment and rehabilitation are required, individuals will be referred to the Medical Treatment Facility

**3–6. Medical identification.** A physician conducting a physical or sick-call examination or administering emergency medical treatment or treating an inpatient may determine that a member is an alcohol or other drug abuser. In such a situation, the physician will notify the servicemember's unit commander and installation ADCO of that determination.

**3–7. Investigation/apprehension.** A member's alcohol or other drug abuse may be discovered as a result of apprehension or investigation by military or civilian law enforcement officials (para 2–9).

(MTF) physician for clinical evaluation in accordance with the provisions of paragraph 3–9. Second and subsequent offenders will be automatically referred to the ADAPCP for initial interview and evaluation by a physician in accordance with the provisions of paragraph 3–9.

**3–9. Program referrals.** Clinical confirmation by a physician of abuse of alcohol or other drugs is a prerequisite to program entry. The initial interview of a servicemember referred to the program will be conducted by the ADAPCP staff. To facilitate early identification and prompt rehabilitation efforts, this initial interview will be conducted within 2 duty days after referral to the ADAPCP. The counselor will obtain a social history, prepare the ADAPCP Initial Intake Record (fig. 6–1), and consult with the servicemember's commander/supervisor. This record and the servicemember's individual health record will be made available to the MTF physician (para 6–4). The procedures for clinical evaluation and confirmation are outlined in section IV.

**3–10. Other referrals.** Individuals who have problems not involving alcohol or other drug abuse may make contact with the ADAPCP staff. When such persons appear for assistance and/or advice and give no history of alcohol or other drug abuse, the ADAPCP staff will provide assistance by referring them to the appropriate agency. A log of the numbers and types of these referrals should be maintained.

1 May 1976                                                   AR 600-85

## Section IV.   CLINICAL CONFIRMATION OF ALCOHOL OR OTHER DRUG ABUSE

3–11. General. To confirm or to discount a finding of alcohol or other drug abuse, regardless of method of initial identification, a careful evaluation of the individual must be conducted. The expertise of a variety of specialists in the field of alcohol/drug abuse will be employed in performing the overall evaluation to determine if abuse has occurred. See chapter 7 for corresponding procedures regarding civilian employees.

a. Initial interview. As an aid to the physician tasked with performing the clinical evaluation, a member of the ADAPCP staff, skilled in counseling techniques, will conduct an initial interview with the individual. This will take place within 2 duty days of the individual's referral. The counselor conducting the initial interview will inform the servicemember of the applicability of the exemption policy to disclosures of information concerning past drug use, or possession of drugs incidental to personal use, or alcohol abuse. The ADAPCP Initial Interview Record (fig. 6–1) will include a current history and appropriate information based on a consultation with the servicemember's immediate commander/supervisor and a thorough screening of the member's medical and personnel records. (Information will not be collected from the civilian employee's supervisor or records.) ADAPCP Initial Interview Record will be made available to the physician prior to clinical evaluation (para 6–4).

b. Clinical evaluation. A physician will be designated to perform the clinical evaluation in accordance with the provisions of TB MED 290. This evaluation will be scheduled within 2 duty days of the initial interview and will result in one of the following actions:

(1) If the physician, after interviewing and examining the individual and reviewing all pertinent data, determines that there has been no alcohol or other drug abuse, he may dismiss the individual from further evaluation. In this event, the Initial Interview Record will be destroyed; however, a non-identifying entry in the ADAPCP log for documenting the workload will be made.

(2) If alcohol or other drug abuse is confirmed, the physician will record his diagnosis (table 6–3) on section A, DA Form 4465 (ADAPCP Military Client Intake and Follow-Up Record) and will sign and date the form. The form will be

forwarded to the ADCO, and the servicemember will be entered into the ADAPCP.

(a) If immediate medical treatment is required for alcohol or other drug dependency or abuse or related illnesses, he will immediately enter the servicemember into detoxification.

(b) If no immediate medical treatment is required, he will refer the servicemember to the ADAPCP where, in conjunction with the ADAPCP staff and the servicemember's immediate commander, a structured program for rehabilitation will be initiated.

(3) If the physician can neither confirm nor deny the existence of alcohol or other drug abuse, the servicemember must be referred for social evaluation (c below) and subsequent joint medical/social consultations (d below) prior to final determination. The time span for consultations and final determination will not exceed 5 duty days.

c. Social evaluation. A member of the ADAPCP staff experienced in the evaluation of alcohol and other drug abuse (e.g., psychologist, social worker, rehabilitation counselor) will conduct an in-depth social investigation of servicemembers referred for evaluation under the provisions of b(3) above. Based on the result of this investigation, the social evaluator will prepare a recommendation for use in the joint medical/social consultation. The recommendation will be based on command or supervisory comments related to conduct or to performance of duty, the servicemember's personnel record, and any other pertinent demographic or investigative data.

d. Joint medical/social consultation. The physician and social evaluator will confer regarding their separate findings on the servicemember. Based on this joint consultation, one of the following actions will be taken:

(1) If the physician can now confirm alcohol or other drug abuse, the servicemember will be entered into the ADAPCP and, in conjunction with the ADAPCP staff and the servicemember's immediate commander, a specific course of rehabilitation will be initiated.

(2) If the result of the joint consultation remains inconclusive, this finding, along with all necessary information, will be presented to the servicemember's immediate commander for action in

3–3

AR 600–85                                                                1 May 1976

accordance with the provisions of e below.

e. *Commander's action.* Upon receipt of the results of an inconclusive joint medical/social consultation (d(2) above), the immediate commander will take one of the following actions:

(1) The servicemember will be placed in the urine surveillance program if the consultation has produced possible, but inconclusive, evidence of drug abuse (para 3–12).

(2) The servicemember will be returned to duty when there is no justification to support a possible clinical confirmation (for example, administrative error). In this event, the physician will make an entry in the servicemember's health records as follows: "Social evaluation completed, negative findings; disposition: return to duty." In addition, the initial interview form will be destroyed; however, a nonidentifying entry in the ADAPCP log for documenting workload will be made.

**3–12. Urine surveillance.** The Urine Surveillance Program (USP) consists of the mandatory submission by a servicemember of a minimum of eight urine specimens on days selected at random during a 1-month period of continuing evaluation. This frequency of testing at proper intervals is sufficient to detect the abuse of identifiable drugs. If all the tests given during that month have been negative, the servicemember will be released from the surveillance program. At this time, all records pertaining to such a servicemember will be destroyed. If a test is positive during the surveillance period, the member must be reevaluated in accordance with the evaluation sequence described in paragraph 3–11.

**3–13. Interview and confirmation process.** Figure 3–1 depicts schematically the flow of actions for servicemembers identified as possible alcohol or other drug abusers. (For civilian employee clients, see fig. 7–2.)

**3–14. Clinical confirmation of civilian personnel.** Since formal program entry is based on clinical confirmation by a physician, evaluation of civilian personnel, retirees, and dependents should follow a sequence similar to that described in this section. Individuals who are clinically confirmed as alcohol or other drug abusers should be encouraged to enter the ADAPCP for rehabilitation or referral to an approved civilian rehabilitation program. For details concerning civilian employees, see chapter 7.

## Section V.   EXEMPTION  POLICY

**3–15. Objective.** The objective of exemption is to facilitate effective identification, treatment, and rehabilitation by eliminating the barriers to successful communications between alcohol or other drug abusers on the one hand, and ADAPCP counselors or physicians supporting the program on the other.

**3–16. Definition of exemption.** Exemption is—

a. An immunity from disciplinary action under the UCMJ, or administrative separation with less than an honorable discharge, as a result of certain occurrences of alcohol abuse, or drug use or possession of drugs incidental to personal use.

b. An immunity from use of evidence obtained directly or indirectly from the member having been involved in the ADAPCP, as described in paragraphs 3–17 and 3–18 and in table 3–1.

**3–17. Exemption policy.** a. Subject to the exceptions listed in paragraphs 3–17b and c below, table 3–1 describes the Department of the Army exemption policy. This policy will be strictly adhered to in

all instances and cannot be modified by subordinate commands.

b. The exemption policy (except for the evidentiary aspect described in column D, table 3–1) does not apply to those offenses of alcohol abuse, nor to drug use or drug possession incidental to personal drug use, that occurred before a servicemember acquired exemption if, at the effective time of exemption, the member—

(1) Is the subject of an alcohol or drug abuse investigation concerning that offense.

(2) Has been apprehended for the offense.

(3) Has been officially warned that he or she is suspected of the offense.

(4) Has been charged under the UCMJ with the offense, or has been offered Article 15 punishment for the offense.

(5) Receives emergency medical treatment for an actual or suspected alcohol or other drug overdose and such treatment resulted from apprehension by law enforcement officials, civilian or military.

AR 600–85

1 May 1976

*c.* Those offenses described in *b* above and offenses other than offenses of alcohol abuse or illegal drug use or possession incident thereto are not affected by the exemption policy even though such offenses may be motivated by *alcohol or other drug abuse or committed concurrently with alcohol abuse, or illegal drug use or possession incident thereto. Thus, appropriate disciplinary action may be initiated against a servicemember committing such offenses if warranted under the circumstances, or the member may be administratively discharged with other than an honorable discharge, if appropriate, but no use may be made of evidence obtained directly or indirectly from the member having been involved in the ADAPCP. However, if the decision to initiate discharge action against a servicemember is motivated by the member's having been identified as an alcohol abuser, by the member's exempt use or incidental possession of drugs, or by the member's having been involved in the ADAPCP, the discharge will be with an honorable discharge. (See para 3–18d.)*

*d.* Exemption is automatic. It is not granted, *and it cannot be vacated or withdrawn.*

*e.* An order from competent authority to submit to urinalysis is a lawful order. Failure to obey such an order may be the subject of appropriate disciplinary action under the UCMJ.

**3–18. Implementation.** *a.* Upon the exemption policy becoming effective initially (column B, table 3–1), the servicemember's unit commander will—

(1) Explain the scope and limitations of the exemption policy to the member. The member will not be required to sign any type of contract or agreement. *The commander will inform the* ADAPCP staff of the briefing and the effective date of exemption, for entry on client records.

(2) Collect any illegal drugs or drug paraphernalia from the servicemember and turn them over to the local provost marshal in accordance with the provisions of AR 190–22.

(3) Refer the servicemember to the local ADAPCP for clinical evaluation if not already accomplished.

(4) Encourage the servicemember to provide information on drug sources (however, such disclosure is voluntary and will not be made a requirement for treatment or rehabilitation).

(5) Advise the servicemember of his/her rights under Article 31, UCMJ, before all dis-

3–6

cussions between the commander and the servicemember concerning the servicemember's alcohol and drug involvement.

*b.* The commander of a servicemember who receives emergency treatment from a military medical facility for an actual or possible alcohol or other drug overdose is made aware of the event as a routine matter. When a servicemember receives such emergency treatment from a civilian medical facility, however, there is no routine procedure by which this fact is conveyed to the servicemember's commander. Further, physicians at any federally-supported civilian alcohol or other drug treatment facility are prohibited by statute from releasing such information without the written consent of the patient. Hence, in cases where information of the emergency treatment does not otherwise come to the attention of the servicemember's unit commander, the following requirements must be met before the exemption policy becomes effective for the servicemember who receives emergency treatment for an actual or possible alcohol or other drug overdose from a civilian medical facility.

(1) The servicemember must inform his/her commander of the facts and circumstances concerning the actual or possible overdose as soon after receiving emergency treatment as is reasonably possible.

(2) The servicemember must give written consent to the treating civilian physician or facility for release of information verifying that emergency treatment was rendered for an actual or possible alcohol or other drug overdose.

(3) If the civilian physician verifies emergency treatment, exemption is effective as of the time the treatment was rendered.

(4) If the civilian physician refuses to release the information in spite of the servicemember's giving written consent, the commander will interpret the member's actions described in (1) above as an act of volunteering for treatment in the ADAPCP, and the exemption policy is effective as of the time the treatment was rendered.

*c.* A military associate of an actual or possible alcohol or other drug overdose victim might be reluctant to assist the victim in obtaining emergency treatment from a medical treatment facility because he himself is an alcohol or other drug abuser and fears possible adverse consequences of becoming involved. Although exemption is not automatically extended to such an in-

dividual, the availability of the following options to that servicemember and his/her commander should reduce reluctance to assist the victim:

(1) The servicemember may seek help for his/her own alcohol or other drug problem from his/her commander, from the physician at the military medical treatment facility, or from any other agency or individual described in paragraph 3–3.

(2) If the commander, because of a servicemember's assistance to an actual or possible alcohol or other drug overdose victim, suspects that member of alcohol or other drug abuse, the commander will inform the member of these suspicions, insure that the member is aware of the treatment and rehabilitation services available, and give the member an opportunity to volunteer for help. If the member admits to alcohol or other drug abuse and volunteers for help, exemption becomes effective as of the time the member asks for help.

d. The servicemember protected by the exemption policy who is recommended for administrative discharge based on nonexempt grounds (paragraphs 3–17b and c) supported solely by evidence other than evidence obtained directly or indirectly from the member's having been involved in the ADAPCP, and as to whom the decision to initiate discharge action is not motivated by the

member's having been identified as an alcohol abuser, by the member's exempt use or incidental possession of drugs, or by the member having been involved in the ADAPCP, may receive an honorable, general, or undesirable discharge, as provided in AR 635–100, AR 635–200, or other regulations authorizing discharge with less than an honorable discharge certificate. However, if either the commander (in his/her recommendation for discharge or in documents forwarded with his/her recommendation), or any member of the board of officers adjudicating the servicemember's case, or the investigating officer/recorder presenting the case before the board, initially introduces evidence prohibited above, the member will receive an honorable discharge certificate, regardless of his overall performance of duty. On the other hand, if the servicemember (respondent) or his counsel initially introduces such evidence, the type of discharge certificate issued is not restricted to an honorable discharge certificate merely because of the presence of that evidence (or rebuttal thereto) in the discharge action record.

e. All situations which could possibly arise in applying the exemption policy in the field cannot be foreseen. As in other instances in which the commander applies regulatory guidance in an actual case, he or she should seek advice from the supporting judge advocate.

## Section VI.  BIOCHEMICAL TESTING

3–19. Objectives. The objectives of biochemical testing are early identification of drug abusers, deterrence of experimental and casual drug use, monitoring rehabilitation progress, and development of data on the prevalence of drug abuse within the Army.

3–20. Policies. a. Concept. Biochemical testing of urine can detect various drugs, including amphetamines, barbiturates, opiates, methaqualone and cocaine, with a high degree of specificity. Therefore, a product containing any of these drugs, even if taken into the body several days prior to the test, may yield a positive result. Current laboratory methodology is such that virtually no false positives are reported.

b. Personnel to be tested.

(1) Military personnel 25 years of age and below on active duty or active duty for training for more than 30 days will be subject to random

testing at or above the frequencies given in appendix F. Military personnel 26 years of age and older are not liable for selection for random testing but are subject to all other categories of testing.

(2) In addition, mandatory event testing of all personnel is required at the following events:

(a) Initial entry on active duty and active duty for training.

(b) Reentry of prior service personnel.

(3) Clinically confirmed military alcohol abusers will be tested as follows:

(a) While in detoxification—three times per week, regardless of age.

(b) If detoxification is not required—during the physical examination when entering into the rehabilitation program, regardless of age.

(c) During rehabilitation for personnel 25 years of age and younger—a sufficient number of tests must be conducted to confirm either multiple

3–7

drug abuse or alcohol abuse only. The number is determined by the unit commander in consultation with the rehabilitation and medical staff.

*(d)* During rehabilitation for personnel 26 years of age and older—as determined by the unit commander in consultation with the rehabilitation and medical staff, with follow-up testing as appropriate.

*(e)* If determined to be a multiple drug abuser at any time, regardless of age—four times per month, on days selected at random, for 2 months, then two times per month on days selected at random for 10 months.

(4) Clinically confirmed military drug abusers, regardless of age, will be tested as follows:

*(a)* While in detoxification—three times per week.

*(b)* While in rehabilitation—minimum of four times per month, on days selected at random, for 2 months; two times per month, on days selected at random, for remaining 10 months.

(5) Military personnel participating in a mandatory urine surveillance program will be tested a minimum of eight times during a 1-month period, on days selected at random.

(6) Military and civilian alcohol and other drug treatment and rehabilitation staff personnel (to include but not limited to typists, record clerks, receptionists, detoxification and laboratory personnel, CPC, counselor, ADAPCP physician, personnel collecting urine specimens, etc.) whose duties involve direct contact, at least weekly, with clients enrolled in treatment or rehabilitation for alcohol or other drug abuse will be tested a minimum of two times per month, on days selected at random. Applicants for civilian positions must be notified before they are employed that their position in the ADAPCP may require urinalysis as a precondition and continuing condition of employment. A current listing by name, position, title, and position description number of those to be tested will be posted on the staff bulletin board by the ADCO and a copy will be furnished to the CPO. The ADCO will be responsible for furnishing the CPO with any changes to the list for use in processing new employees required to sign the written condition of employment (app C). The ADAPCP is a combined program for the rehabilitation of abusers of alcohol and other drugs. In the few programs that have not been implemented as combined programs, the following procedures regar-

ding urinalysis testing of civilian staff personnel will be followed:

*(a)* Personnel who may have been hired for, or are currently providing counseling services exclusively for clients whose only identified drug of abuse is alcohol will not be required to undergo periodic urine testing as a continuing condition of employment when the following conditions are met:

1. Clients' only identified drug of abuse continues to be alcohol.

2. Counselor and clients utilize a physical facility for treatment/rehabilitative purposes which is *separate and distinct* from one used by "other drug" clients and counselors.

*(b)* In those programs which currently utilize separate facilities for "alcohol only" abusers and "other drug only" abusers, any "alcohol only" client who is positively identified as an abuser of an "other drug" of abuse must be transferred to the facility designated for treatment/rehabilitation of "other drug" abusers. This will preclude establishing a requirement to conduct periodic urine testing of "alcohol counselors" on a temporary basis.

(7) Commanders may at any time direct that a servicemember be tested when the individual is suspected of having recently abused drugs.

(8) Commanders may establish local event testing beyond that required in this regulation when a need for such testing can be demonstrated (para 3–23).

(9) Physicians may at any time direct that a servicemember patient be tested when drug abuse is suspected.

(10) Military and civilian drug abuse testing laboratory personnel will be tested a minimum of two times per month, on days selected at random.

(11) Make-up tests are required for all categories of testing. See paragraph 3–22*f*(4) for make-up *random* testing time criteria.

**3–21. Responsibilities.** *a.* The Deputy Chief of Staff for Personnel, DA, will provide General Staff supervision of biochemical testing.

*b.* The Surgeon General will—

(1) Provide the laboratory testing capability to support Army's responsibilities.

(2) Prescribe the methodology to be used by the laboratories supporting biochemical testing.

(3) Provide technical guidance for the collection and shipment of specimens.

(4) Collect and evaluate biostatistical data related to testing.

*c.* Major Army commanders will coordinate and monitor biochemical testing within their commands.

*d.* Commanding Generals of FORSCOM, TRADOC, DARCOM, USASA. USAHSC, USACC, MDW; and MTMC; and commanders of oversea commands will—

(1) Monitor the implementation of biochemical testing at installations and activities over which they exercise jurisdiction.

(2) Designate points at appropriate locations to collect and ship specimens to the responsible laboratory identified in appendix G.

(3) Establish and monitor specimen submission quotas for specimen collection points.

(4) Establish contact and coordination with servicing laboratories as appropriate.

*e.* Installation commanders will—

(1) Appoint an officer, normally the ADCO, as installation biochemical test coordinator and installation point of contact.

(2) Establish and maintain coordination with the laboratory providing support to the installation.

(3) Insure that the installation biochemical testing conforms to guidelines in paragraphs 3–12, 3–13, 3–22, and 3–23.

(4) Establish procedures whereby unit commanders are informed of *all* laboratory positive results concerning personnel in their units.

*f.* Drug testing laboratories will—

(1) Provide testing service to all Army, Navy, Air Force, and Marine Corps installations and activities within the geographic area of responsibility shown in appendix G. (Air Force and Navy laboratories will provide testing service to Army installations and activities located within the laboratories' geographic areas of responsibility.)

(2) Exercise internal quality control surveillance to insure maintenance of the minimum drug detection sensitivity levels shown in table 3–2.

(3) Evaluate all urine specimens for test detectable drugs of abuse using radioimmunoassay (RIA). All specimens positive for detectable drugs of abuse will be confirmed by the use of gas liquid chromatography (GLC). Laboratory reports will be based only upon positive results confirmed by GLC.

(4) Within 2 duty days after receipt of specimens, report to the originating agency, electrically or telephonically, confirmed positive results and a statement that the balance of the specimens were negative. The completed DD Form 1892 (Drug Screening Urinalysis Record) will also be dispatched at this time to the originating agency (para 3–24*b*(5)). If MINIMIZE is in effect, data will continue to be transmitted via electrical means or by telephone.

(5) Establish and maintain direct technical liaison, to the extent considered necessary and desirable, with other testing laboratories for purposes of standardization of methodology and the exchange of technical information which may be of mutual benefit.

*g.* The Armed Forces Institute of Pathology will—

(1) Perform quality control testing for all Army, Air Force, Navy, and commercially operated laboratories.

(2) Provide laboratory quality control reports for the use of military departments and OASD (HA) in determining laboratory proficiency.

**3–22. Random testing.** Biochemical testing of randomly selected personnel is the major component of the DOD Drug Abuse Testing Program. Installation random testing procedures will be designed and implemented to—

*a.* Insure a relatively constant workload on the drug testing laboratories.

*b.* Provide a completely random system of selecting those to be tested so that a unit's or an individual's chances for testing will remain relatively constant throughout the year.

*c.* Be completely unannounced to the units or individuals to be tested.

*d.* Be invulnerable to prediction based on historical analysis.

*e.* Be capable of adjusting to changing requirements.

*f.* Insure that selected personnel are tested promptly, in accordance with the following guidelines:

(1) Notification of selection should be made at the first formation of the day (e.g., work call or start of office hours).

(2) To the maximum extent possible, selected personnel should be tested during the duty day of notification.

3–11

(3) Selected personnel who are away from the unit area or workplace for authorized purposes on the day of notification will be tested if they return prior to the end of the second day after notification.

(4) Selected personnel whose authorized absence (leave, TDY, hospital, confinement) extends beyond 2 days after notification need not be tested upon their return.

(5) Selected personnel who are not tested during the 2 days after notification and whose absence was not authorized will be tested upon their return.

(6) Rosters of personnel selected for testing will be maintained and annotated with a brief explanation of the reason for any selected individual's failing to be tested. Rosters will be retained for 1 year.

*g.* Use one of the selection schemes described in DA Pam 600–18. Requests to use alternate selection schemes will be forwarded through command channels to HQDA (DAPE-HRL-A) WASH DC 20310.

**3–23. Additional commander-directed testing.** Commanders desiring to conduct additional testing (para 3–20*b*(8)) will follow the procedures in *a* and *b* below.

*a.* Requests to implement recurring event testing beyond that required in paragraph 3–20*b*(1) will be forwarded, through command channels, to HQDA (DAPE-HRL-A) WASH DC 20310.

*b.* Requests for large volume testing on a one-time basis will be forwarded to the major command coordination officer for determination of laboratory capability.

**3–24. Collection and transportation of urine specimens.** *a.* The installation commander has the overall responsibility for the collection of urine samples. At many installations medical resources have been provided to support this function. Where such hospital support resources exist, the MEDCEN/MEDDAC will provide personnel to the ADCO to assist in urine collection procedures.

*b.* Urine specimens will be collected for testing under direct observation. Collection of urine specimens will be accomplished in a manner and under circumstances conducive to the preservation of human dignity.

(1) Samples will contain a minimum volume of 60 milliliters.

(2) Samples will be properly labeled and forwarded for transportation within 24 hours of collection.

(3) Bottle, Urine Specimen, Shipping, 120s; U/1—Package, NSN 6640-00-165-5778, will be used exclusively in shipping urine samples.

(4) DD Form 1892 (Drug Screening Urinalysis Record) will be completed and forwarded with specimens by the submitting unit. In addition, a DD Form 1155 (Order for Supplies and Services) will be included with specimens forwarded to a civilian contract laboratory.

*c.* Urine specimens will be shipped without preservative or refrigeration to the appropriate test laboratory by the method of expedited transportation which will insure delivery at the earliest practicable date but not later than 3 days after sample collection.

(1) Shipments will be assigned transportation Priority 1, with a required delivery date (RDD) 3 days after the date on which the specimen was taken. The priority and RDD will be entered in the appropriate blocks of DD Form 1384 (Transportation Control and Movement Document) or in the "Description of Contents" block of the US Government bill of lading.

(2) Transportation officers will arrange for movement of these samples by expedited surface transportation; US Postal Service; the Military Airlift Command transportation system; nonindustrially funded military organic aircraft; US flag commercial air freight; air express; air freight forwarder; or, when none of these can satisfy the movement requirement, by foreign flag air carriers.

*d.* Specimens which have been collected from individuals participating in rehabilitation programs will be clearly identified by the collecting agency with the word "REHAB" at the top of each DD Form 1892 and on each specimen bottle. "REHAB" specimens will be shipped in cardboard containers separate from routine specimens so that they may be easily identified on receipt at the laboratories. Drug testing laboratories will accord all "REHAB" specimens priority testing by inserting them in production lines ahead of all routine drug urine specimens awaiting testing.

1 May 1976                                                                    AR 600-85

### Table 3-2.   Minimum Drug Detection Sensitivity Levels

| Drug Class | RIA/GLC |
|---|---|
| Opiates | |
| Total Morphine | 400 ng/ml |
| Methadone/Codeine | 400 ng/ml |
| Amphetamines | 400 ng/ml |
| Barbiturates | 200 ng/ml |
| Methaqualone | 1000 ng/ml |
| Cocaine | 1000 ng/ml |



**DEPARTMENT OF THE ARMY**
**ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**
**251 18TH STREET SOUTH, SUITE 385**
**ARLINGTON, VA  22202-3531**

March 20, 2020

AR20180015371, Baxley, Michael C.

Mr. Michael C. Baxley
219 R Bar M Ranch Road
Florence SC  29501

Dear Mr. Baxley:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army.  I have enclosed a copy of the Board's Record of Proceedings.  This decision explains the Board's reasons for denying your application.

This decision in your case is final.  You may request reconsideration of this decision letter to the above address only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

Sincerely,

3/20/2020

X _____

Joseph P. Lister
Executive Officer, ARBA
Signed by: LISTER.JOSEPH.PATRICK.1164786028

Enclosure


Printed on   Recycled Paper

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF:  Baxley, Michael C.

BOARD DATE:  7 October 2019

DOCKET NUMBER:  AR20180015371

APPLICANT REQUESTS:  upgrade of his under honorable conditions discharge to honorable.

APPLICANT'S SUPPORTING DOCUMENTS CONSIDERED BY THE BOARD:

- DD Form 149 (Application for Correction of Military Records)
- DD Form 214 (Report of Separation from Active Duty)
- Veteran Affairs (VA) summary of benefits letter
- VA officer letter
- response to medical advisory

FACTS:

1.  The applicant did not file within the three year time frame provided in Title 10, United States Code (USC), section 1552(b); however, the Army Board for Correction of Military Records (ABCMR) conducted a substantive review of this case and determined it is in the interest of justice to excuse the applicant's failure to timely file.

2.  The applicant states he went to Shaw Air Force Base in Sumter, SC on 27 November 2018, to apply for a disabled veteran's identification (ID) card.  He was told that due to having a character of service of under honorable conditions on his DD Form 214, he could not be issued a disabled veteran's ID card.  He was also told that it would have to state honorable.

3.  The applicant provides:

    a.  VA summary of benefits letter, dated 1 November 2018, he has a service connected disability rating of 70%.  As of 5 March 2018, he began receiving payment of 100% because he was determined to be unemployable due to service connected disabilities.

    b.  VA officer letter, shows he is 100% service connected effective 5 March 2018.

4.  Review of the applicant's service record shows:

1

ABCMR Record of Proceedings (cont)                    AR20180015371

   a.  His DD Form 214 shows that he enlisted in the Regular Army on
3 March 1974.

   b.  His DA Form 4187s (Personnel Action) reflect his duty status changed as follows:

   - 23-27 May 1975, confined civilian authorities, three counts of drug violation,
     court date 11 June 1975, one year probation
   - 26 November – 3 December 1975, confined civilian authorities,
     driving while intoxicated, reckless driving and failure to stop at red light, final
     court date was 4 March 1976, charges reduced to improper driving, paid a
     $132 fine and court cost

   c.  On 25 June 1976, he was convicted by a special court martial for failing to obey a
lawful order and unlawfully grabbing a female Soldier with his hands on 19 June 1976.
He received reduction to private one (PVT/E1), forfeiture of $100 per month for
4 months and confinement with hard labor for 4 months.  The sentence was adjudged
on 26 July 1976 and approved by the convening authority on 19 August 1976.

   d.  His DA Form 3975s (Military Police (MP) Report) shows the following:

   - 5 September 1976, arrested for possession of suspected marijuana and
     wrongful possession of marijuana, 6 September 1976, FR Form 1724 (MP
     Investigations Chemical Field Test Report) shows 4.10 grams, residue and
     0.19 gram of marihuana
   - 12 September 1976, arrested for no pass in possession and resisting
     apprehension

   e.  DA Form 2496 (Disposition Form) shows the following on/for:

   - 20 September 1976, failed to obey a lawful order on 16 September 1976,
     revocation of pass privileges for 7 days and 7 days extra duty
   - 20 September 1976, wrongfully engaged in a fist fight on 18 September 1976,
     14 days extra duty and loss of unit privileges

   f.  On 20 September 1976, his immediate commander recommended that he be
discharged from the service for frequent incidents of a discreditable nature.  Enclosed is
a resume of discreditable acts, not including punishment under the uniform code of
military justice.

   g.  On 22 September 1976, a mental evaluation was conducted.  The examiner
stated the applicant had the mental capacity to understand and participate in board
proceedings and was mentally responsible.  He met the retention standards prescribed
in chapter 3, AR 40-501 (Medical Services Standards of Medical Fitness).

ABCMR Record of Proceedings (cont)                                    AR20180015371

h.  On 23 September 1976, he was advised by his consulting counsel of the basis for the contemplated action to accomplish his separation for (misconduct) (under the provisions of chapter 13, Army Regulation (AR) 635-200 (Personnel Separations – Enlisted Personnel) and its effects; of the rights available to him; and the effect of any action taken by him in waiving his rights.  He requested consideration and personal appearance of his case before a board of officers.  He did not submit a statement on his behalf.  He requested representation by counsel.  He understood:

- that he may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to him
- as the result of issuance of an undesirable discharge under conditions other than honorable, he may be ineligible for many or all benefits as a Veteran under both Federal and State laws and that he may expect to encounter substantial prejudice in civilian life
- understands that he may, up until the date the discharge authority directs or approves his discharge, withdraw this waiver and request that a board of officers hear his case

i.  On 23 September 1976, his immediate commander requested the applicant be discharge from the service under the provisions of paragraph 13-5, AR 635-200, for misconduct because of frequent incidents of a discreditable nature.  He also requested the requirements for further counseling and rehabilitation in accordance with (IAW) paragraphs 13-7 and 13-8, AR 635-200 be waived.

j.  On 23 September 1976, the intermediate commander recommended the applicant be discharged for misconduct.  Due to the applicant being confined he requested a minimum release date on or about 5 November 1976.  He also requested the requirements for further counseling and rehabilitation IAW paragraphs 13-7, 13-8, and 13-9, AR 635-200 be waived.

k.  On 29 October 1976, a board of officers convened at Fort Riley, KS, and recommended the applicant be eliminated from the service for misconduct with issuance of an undesirable discharge certificate.

l.  On [unknown date], the applicant submitted a statement on his own behalf.  His statement is as follows:

"The board reviewed my records and decided that I should get an undesirable discharge.  Sir, I feel that is very unjust.  They decided that I performed to (i.e. too) many acts of misconduct.  Sir, should you check my records, you will find I have problems with alcohol and drugs.  The biggest misconduct charges are related to problems with alcohol and drugs.  And it is my understanding, that people in the Army with problems with alcohol or drugs should be eliminated from the service under the provisions of Chapter 16, AR 635-200.  That should have happened to me 11 months ago.  If it had, I would not be in the trouble that I am in now.  Now Sir, what I am asking

3

ABCMR Record of Proceedings (cont)                    AR20180015371

from you is to review my records and see if you believe that I should get a better discharge, rather than undesirable."

m.  On 4 November 1976, the applicant's senior defense counsel (SDC) stated, it is believed that certain evidence present in the "board packet" which passed through the chain of command and was presented to the board was in fact "exempt" as defined in paragraph 3-16b, AR 600-85 (Alcohol and Drug Abuse and Prevention and Control Program) and chapter 16, AR 635-200.  The SDC requested that the commander consider the factors and in the first instance, discharge the applicant pursuant to the clear mandate of chapter 16, AR 635-200.  If the commander, however, did not concur it was requested that he consider the equities of the situation and at a minimum direct issuance of a general discharge certificate.  Additional comments and regulatory extracts may be reviewed in the packet.

n.  8 November 1976, the SJA stated there was no prohibition against mention of a member's failure in rehabilitation, as long as involvement in the program was not the motivating factor in recommending discharge.  There was sufficient other evidence to support the recommended discharge.  Additional comments and regulatory extracts may be reviewed in the packet.

o.  On 9 November 1976, the separation authority approved the request for discharge from the service for misconduct with issuance of an undesirable discharge certificate.

p.  On 10 November 1976, the applicant was discharged from active duty under the provisions of chapter 13, AR 635-200.  He completed 1 year, 10 months, and 15 days of active service.  His DD Form 214 (Report of Separation from Active Duty) shows he was awarded or authorized the National Defense Service Medal.

4.  There is no evidence the applicant has applied to the Army Discharge Review Board for review of his discharge within that board's 15-year statute of limitations.

5.  On 26 June 2019, the Army Review Boards Agency (ARBA) medical advisor rendered an advisory opinion in the processing of this case.  She states IAW the 3 September 2014 Secretary of Defense Liberal Guidance Memorandum, the applicant's military medical records do not support the existence of behavioral health condition at the time of discharge.  The applicant's records indicate that the applicant did meet medical retention standards IAW AR 40-501.  A diagnosis of dysthymic disorder is not a mitigating factor for the misconduct that led to his discharge.  Characterization of discharge determination is a separate issue from the VA's determination of service-connected disability.  Based on all documentation reviewed, there is nothing to support an upgrade to his discharge characterization.

6.  On 19 August 2019, the applicant responded to the ARBA medical advisory, stating his military medical records does support the existence of a behavioral health condition

4

ABCMR Record of Proceedings (cont)                           AR20180015371

at the time of discharge.  His records did not indicate that he met medical retention
standards.  A diagnosis of persistent depressive disorder (claimed as depression), is a
mitigating factor for the misconduct that led to his discharge.  Characterization of
discharge determination is a joined issue of the VA's determination of service-connected
disability.  Based on all documentation that he reviewed, there are mitigating
circumstances to support an upgrade to his discharge.  He provided a detailed self-
authored letter of his events leading up to his discharge, references, and extracts of his
separation packet (detailed letter and enclosed in packet).

7.  By regulation AR 635-200 provides that commanders will separate a member under
chapter 13 when, in the commander's judgment, the member will not develop sufficiently
to participate satisfactorily in further training and/or become a satisfactory Soldier.  A
general or honorable discharge was considered appropriate.

8.  In reaching its determination, the Board can consider the applicant's petition and his
service record IAW the published equity, injustice, or clemency determination guidance.

BOARD DISCUSSION:

After review of the application and all evidence, the Board determined relief is not
warranted.  The applicant's contentions, the medical advisory opinion, and his rebuttal
were carefully considered.  The Board applied Department of Defense standards of
liberal consideration to the complete evidentiary record and did not find any evidence of
error, injustice, or inequity.  He did not provide character witness statements or
evidence of post-service achievements for the Board to consider.  Based upon offenses
of a criminal nature of the offenses leading to the separation, the Board agreed that the
applicant's discharge characterization was warranted as a result of the misconduct.

BOARD VOTE:

| Mbr 1 | Mbr 2 | Mbr 3 | |
|-------|-------|-------|-----------------------|
| :     | :     | :     | GRANT FULL RELIEF     |
| :     | :     | :     | GRANT PARTIAL RELIEF  |
| :     | :     | :     | GRANT FORMAL HEARING  |
| :BS   | :ICC  | :AMD  | DENY APPLICATION      |

ABCMR Record of Proceedings (cont)                          AR20180015371

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

☑ Expired certificate

X  Barbara Stansbury
_____

CHAIRPERSON
Signed by: STANSBURY.BARBARA.1245179614

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

REFERENCES:

1.  Title 10, USC, section 1552(b), provides that applications for correction of military records must be filed within three years after discovery of the alleged error or injustice. This provision of law also allows the ABCMR to excuse an applicant's failure to timely file within the three-year statute of limitations if the ABCMR determines it would be in the interest of justice to do so.

2.  Army Regulation 635-200 (Personnel Separations – Enlisted Personnel), in effect at the time, sets forth the basic authority for the separation of enlisted personnel:

   a.  Paragraph 1-9d, states that an honorable discharge is a separation with honor. Issuance of an Honorable Discharge Certificate is predicated upon proper military behavior and proficient performance of duty during the member's current enlistment or period of obligated service with due consideration for the member's age, length of service, grade, and general aptitude.

   b.  Paragraph 1-9e, states that a general discharge is a separation from the Army under honorable conditions. It is issued to a member whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge. The recipient of a general discharge is normally a member whose military record and performance is satisfactory.

   c.  Chapter 13 contains the policy and outlines the procedures for separating individuals for unsatisfactory performance, and provides that commanders will separate a member under this chapter when, in the commander's judgment, the member will not develop sufficiently to participate satisfactorily in further training and/or become a satisfactory Soldier. A general or honorable discharge was considered appropriate.

6

ABCMR Record of Proceedings (cont)                    AR20180015371

3.  On 25 July 2018, the Under Secretary of Defense for Personnel and Readiness issued guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records (BCM/NRs) regarding equity, injustice, or clemency determinations.  Clemency generally refers to relief specifically granted from a criminal sentence.  BCM/NRs may grant clemency regardless of the type of court-martial.  However, the guidance applies to more than clemency from a sentencing in a court-martial; it also applies to other corrections, including changes in a discharge, which may be warranted based on equity or relief from injustice.  This guidance does not mandate relief, but rather provides standards and principles to guide Boards in application of their equitable relief authority.  In determining whether to grant relief based on equity, injustice, or clemency grounds, BCM/NRs shall consider the prospect for rehabilitation, external evidence, sworn testimony, policy changes, relative severity of misconduct, mental and behavioral health conditions, official governmental acknowledgement that a relevant error or injustice was committed, and uniformity of punishment.  Changes to the narrative reason for discharge and/or an upgraded character of service granted solely on equity, injustice, or clemency grounds normally should not result in separation pay, retroactive promotions, and payment of past medical expenses or similar benefits that might have been received if the original discharge had been for the revised reason or had the upgraded service characterization.

//NOTHING FOLLOWS//